1820.<br>BROWN<br>v.<br>RICKETS.

Decree accordingly.

---

BROWN *against* W. & G. R. A. RICKETS, *Executors of* CATHARINE BREWERTON.

An executor, or trustee, is not allowed to use the trust money, and retain the profits arising from it.

If he mixes it with his own money, and uses it in his business or trade, the profits of which are not known, he must pay *interest*.

But where there was no direction in the order of reference to the Master, to inquire into the use and profit of the fund, and he had charged the party with *interest*, the report, to prevent the effect of *surprise* on the party, was recommitted to the Master, to take further proofs or explanations, and correct any mistakes.

Where a plaintiff claimed as legatee and as a creditor, and proved only his right as legatee; and the defendants, *executors*, had caused great expense and delay, by raising unfounded objections, neither party was held entitled to *costs*.

THE Master, in pursuance of the decretal order in this cause, (*vide* S. C. vol. 3. p. 553.) by which he was directed, " to take an account of the proceeds of the fund created by the will of the testator, to pay legacies, and the amount of the debts and funeral expenses, and to make to the defendants all just allowances, and to examine the parties upon interrogatories, as he should deem necessary," reported a balance due to the plaintiff, out of the fund, of 2,936 dollars,

*January 27th.*

1820.

BROWN
v.
RICKETS.

30 cents, and charged the defendants with interest on the net proceeds of the sales by them, of certain houses and lots in the city of *New-York.* The Master stated, as reasons for charging the defendants with such interest, that the legacies were directed, by the will, to be increased or diminished, as the fund increased or diminished, and that the legatees had the same right to such increase as to the original fund; and because those proceeds arose from what was previously productive either in rents or interest, and because the defendants had made use of the moneys belonging to the plaintiff.

The defendants were examined upon interrogatories before the Master, and stated, that as to the application and investment of the 3,500 dollars, bequeathed to the plaintiff, and to *William Brown*, deceased, whose right was claimed by the plaintiff as his administrator, " they had not made any particular application or investment thereof. That the fund, applicable to the payment of the legacies, to the plaintiff and *W. B.*, as it came into the hands of the defendants in money, was mixed with their own private funds, and may have been sometimes used by them in their business, though they were ready at all times to have paid the plaintiff out of the said fund, as the same came into their hands in cash, if he would have relinquished his claims upon the estate beyond the said legacy, and given the security required by law."

Exceptions were taken to the report, in regard to the allowance of interest : 1. Because, the order of reference contained no authority to the Master to charge the defendants with interest, and the decree of the Court had not established the plaintiff's right to interest ; 2. Because, it was not a case in which, by the rules of the Court, interest was chargeable against the defendants in favour of the plaintiff ; 3. That if chargeable, the mode of calculating it was inaccurate.

There were some other exceptions, which it is unnecessary to state.

*S. Jones,* in support of the exceptions.

*Burr,* contra.

THE CHANCELLOR. It is the established doctrine of the Court, that an executor, or other trustee, cannot be permitted to convert trust funds to his own use, without being responsible for the profits of the money. He is not to make any gain to himself from the use of the funds, but it must all be accounted for to the *cestuy que trust.* So, if an executor, or other trustee, mingles the trust moneys with his own, so as to answer the purpose of credit, or if he puts the money in jeopardy, by involving it in the risk of his trade, he must answer for what it may reasonably be supposed to have made. I have had occasion frequently to lay down this rule; (*Dunscomb* v. *Dunscomb, Manning* v. *Manning,* and *Schiefflin* v. *Stewart,* 1 *Johns. Ch. Rep.* 510. 535. 623—629.) and it may be declared to be a principle of universal law, that a tutor, curator, or trustee, shall not make a profit of the trust money, and then retain the profits. Whatever interest the trustee made ought to be paid. Though it should even be proper to keep the money in deposit, yet if he did, in fact, make interest of it, he ought to pay it. He must not, in any event, be a gainer by his employment of the trust fund.

I am surprised, that this point should be again drawn into question, after what has been said and ruled in this Court, and considering how fully and explicitly the doctrine has been established in the *English* Chancery.

In *Ratcliffe* v. *Graves,* (1 *Vern.* 196. 2 *Ch. Cas.* 152.) as early as 1683, the Lord Keeper said, it was reasonable that executors, in all cases, should answer interest, if they

had used the money of the testator in trade, or received any interest for it, and that they should not turn the same to their own private advantage. He ruled, that the administrator, in that case, should account for interest, unless he made out that he had kept the money by him. Afterwards, in 1706, in the case of *Lee* v. *Lee*, (2 *Vern.* 548.) the Lord Keeper decreed, that though a trustee, or executor, was not directed to place money at interest, yet, where he made interest, he should be accountable for it.

The practice, before the earliest of these decisions, had been different, and so it was stated in that case ; and some of the observations of Lord *Hardwicke* (*Adams* v. *Gale*, 2 *Atk.* 106. *Child* v. *Gibson*, 2 *Atk.* 603.) would seem to be in contradiction to this salutary doctrine. He gives an extremely lax and dangerous license to executors, if we can possibly give credit to the accuracy of the reporter. But from the time of Lord *Thurlow*, we find the true doctrine of the court asserted with uniformity and precision, and placed upon the soundest principles of policy and justice.

In *Newton* v. *Bennet*, (1 *Bro.* 359.) the executor had moneys remaining, from time to time, in his hands, which he used in common with his own moneys, in the way of trade, and the question was, whether he should pay interest. Lord *Thurlow* admitted there were many sayings in the books, to prevent its being laid down as a general rule, that an executor should pay interest for money used in the course of his trade, and that he was required to say that an executor might keep the testator's money, and apply it to the uses of his trade, without being liable to interest. But, he said, " it was impossible this should have been laid down as the law of the Court;" and he charged the executor with interest, who had called in money, and made profit of it, in the way of his trade. In the subsequent case of *Perkins* v. *Baynton*, (1 *Bro.* 375.) the administrator had received money, and kept it, for five years, in his hands, and it was referred to a master to inquire whether he had made interest. The mas-

ter reported, that he had mixed it with his own money, and from time to time, had laid out the mixed fund in government securities, and had, therefore, made some interest, though he could not report what, in particular. The Lord Chancellor decreed, that he be charged with interest at four per cent., from the time the money came to his hands. Again, in *Treves* v. *Townsend*, (1 *Bro.* 384. 1 *Cox*, 50. S. C.) Lord *Loughborough* charged the assignee of a bankrupt with interest, when the money lay at his banker's, and he had been negligent in making a dividend. He observed, that the money of a merchant at his banker's, does not lie idle; it is part of his stock in trade; and when this cause came on to be heard before Lord *Thurlow*, it was moved for a reference, to inquire whether the assignee had made any, and what interest; but the Chancellor said the inquiry was totally out of the case, for the answer admitted sufficient, when it admitted that *he used the money in his own trade, in common with his own*, and he charged him with interest at five per cent. The same point was ruled in the case of *The Bankruptcy of Hilliard*; (1 *Ves.* jun. 89.) and in *Franklin* v. *Frith*, (3 *Bro.* 433.) the Chancellor charged an executor, with interest, who kept money idle at his banker's, and observed that " keeping money at his banker's, was no proof that he did not make interest of it."

In a recent case, before the House of Lords, (4 *Dow's P. Rep.* 131.) Lord *Eldon* declared the rule of the *English* law in a very emphatical manner. A trustee can make no profit to himself of the trust money; and if he offered to pay a certain rate of interest, the *cestuy que trust*, might say " No, you must account to me for all the profits you have made of my money, and I have a right to know from you what profits you have actually made of it, and if you have made ten per cent., I am entitled to it. If the use you made of it, was to make any particular rate of interest, then you must pay me that interest. If you have mixed my money with your

own, so that you cannot distinguish what is yours, and what is mine, and cannot tell what profit you have made of my money, less than the legal interest, you shall pay me interest at five per cent."

In the case before me, the defendants were merchants. They are so designated in the testator's will. They convert into cash, in *May*, 1816, in pursuance of the directions of the will, several houses and lots in the city of *New-York*, and in answer to the question, what was done with that money, they say, "It was mixed with their own private funds, and may have been sometimes used by them in their business." There can be no doubt, from that admission, and from the cases which have been referred to, that they were properly chargeable with lawful interest; and the only difficulty that can arise in the case, proceeds from the want of a direction in the decretal order, to inquire into the use and profit of the fund in their hands. The defendants may have been taken by surprise, and not have been prepared to give more precise explanations on the subject. Lord *Thurlow*, in the case of *Treves* v. *Townsend*, after having charged the defendant with interest, offered to his counsel a reference to inquire into the rate of interest to be made by money so employed; and I think, that under the circumstances of the case, it would not be unreasonable to have the cause sent back to the master, to give the defendants all the opportunity they may want for explanation. The omission of any direction concerning interest in the former order, is the only reason for a further reference.

*Question of costs.*

The question of costs may still be reserved, though I think that neither party has just claims to any. The plaintiff has united with his demand of his legacy, a claim as a creditor, and has failed to establish it, and the defendants have caused delay and expense, by raising objections, in the course of the cause, without foundation. Though an executor may have a claim to costs, as far as goes to the taking

the account, yet, as Lord *Thurlow* observed, in *Newton* v. Bennet, on this point, it is difficult " to separate the expenses," and he refused costs to either party.

*Decretal order.*

The following order was entered : "Inasmuch as the question of interest, with which the master has charged the defendants, and with which they ought to be charged upon the facts stated in the report, may have operated as a surprise upon the defendants, the same not being expressly mentioned in the decretal order directing a reference to the master in this case ; to the end, therefore, that the defendants may have an opportunity to give further explanations, if any they have, touching the question of interest ; it is *Ordered*, &c., that the said report, for that purpose, be recommitted to the master, and that he take such other and further proof, touching interest, chargeable to the defendants, as may be offered by either party, and that he allow or disallow interest, as the same, upon such further examination, shall appear to be just and equitable. And if interest be allowed, that he, at the same time, revise the mode of calculating it, and correct any mistake, if any shall appear, in such mode, &c."