## HALSTED *vs.* HYMAN.

### *In the matter of the Estate of* SAMUEL HYMAN, *deceased.*

THE wife of the intestate, during his lifetime, carried on a millinery store, but not as her own separate establishment ; and the stock in trade not having been included in the inventory, it was *Held* that she should be charged with its value on the final accounting.

One of the sureties of the administratrix having bought up claims against the intestate, at three shillings on the dollar, and there being no proof of connivance between him and the administratrix, or that the moneys of the estate had been used in buying the claims, the purchases were *Held* to be valid.

A surety on an administration bond, does not, before an accounting is had, stand in a fiduciary relation to the creditors of the intestate, and is not chargeable with any primary responsibility as to the management of the estate.

The administratrix, having converted the assets into money shortly after taking out letters, and placed the money in the hands of a relative who used it, she was charged with interest after the lapse of six months from the date of the administration.

A. R. DYETT,
E. S. CAPRON, *for Creditors.*
P. J. JOACHIMSEN, *for Administratrix.*

THE SURROGATE.—In this case, several creditors interposed objections to the final account of the administratrix, claiming that she should be charged with the value of the stock in trade of a millinery store, conducted by her prior to her husband's decease ; that she should be compelled to pay interest on the amount of money realized by her out of the assets, shortly after letters were issued ; that certain claims of other parties, alleging themselves to be creditors, were not valid ; and that purchases of demands against the estate, made by one of the sureties on the administration bond, at the rate of three shillings on the dollar, enured to the benefit of the estate.

The millinery store, conducted by Mrs. Hyman, does not seem to have been managed as her separate establishment, in any such way as to make it the separate property of the widow. The debts of this store have been presented as claims against the estate, and I see no reason why the stock in trade on hand at Hyman's death, should not have been included in the inventory. If that had been done, we would have been left in no uncertainty as to the extent of that portion of the assets, and their value. The administratrix having failed to do her duty in that respect, it is now necessary to arrive at the amount, as nearly as may be, by a general estimate. I find that during the three months preceding the intestate's decease, some eight hundred dollars of debt were contracted for that store, and the extent of cash purchases there are no means of ascertaining. I am inclined to think the administratrix should be charged with $500, as the value of that establishment. The debts of Alexander, Woolfe, and Phillips, are sworn to positively, and I cannot indulge conjecture and suspicion against clear and explicit testimony. It is true, the debts of the decedent compared with his property were large, but that often happens in cases of insolvency, even where the debtor has enjoyed good credit until the moment of the catastrophe. If there was any diminution of the stock of the clothing store before letters of administration issued, which I do not think clear, it was not the fault of the widow and should not be charged on her. The decedent died November

7, 1853, and his widow took out letters on the 9th. There is proof that goods left the store after that, but I think that they were cut goods and were included in the inventory. As to the acts of Samuels in buying up the debts of the intestate, there is no connivance shewn between him and the administratrix, and there is no rule of law which would prevent him from speculating in the assets. He is not a trustee and does not occupy a fiduciary capacity towards the creditors. He is bound to respond to them in case the administratrix has not faithfully discharged her duty, but as to the management of the estate, he is not charged by law with any primary responsibility. It is true, that a surety for a particular debt, cannot recover of his principal more than he has been compelled to pay on account of his suretyship, and if he voluntarily buys up or compounds for the creditor's claim, the composition will be held in equity to be made for the benefit of the principal (*Butcher* vs. *Churchill*, 14 *Vesey*, 567; *Reed* vs. *Norris*, 2 *My. & Cr.*, 361; *Glossop* vs. *Harrison*, 3 *Ves. & B.*, 134; *Smith* vs. *Compton*, 3 *B. & Ad.* 407; *Duffield* vs. *Scott*, 3 *T. R.*, 374; *Pitman, on Principal and Surety*, 134; *Burge Com. Surety*, 359; *Theobald*, 227). But this rule arises out of the implied contract between principal and surety, that the former shall reimburse the latter for any outlay made on his account, and also out of the relation which the contract has established between the surety and the creditor, by which the surety has been placed in position to make the composition. There is no such privity between the surety to an administration bond and the creditors of the estate of an intestate, before an accounting has been had. The surety is under no obligation to pay the creditors their claims, if the administrator neglect to pay them. Nor is that the duty of the administrator. The obligations of the administrator and of the surety, are both discharged, if the assets are faithfully applied in due course of administration. The surety, by virtue of his contract, possesses no peculiar opportunities or advantages for dealing in the claims against the estate, or for compounding the debts. After there has been an account-

ing, and the sums the administrator should pay the creditors have been adjusted and liquidated, and established by decree, so that they become a personal charge on the administrator, and a measure of the liability of the surety, then a composition made by the latter would probably enure to the benefit of the former. In the present case, the surety bought up the debts before an accounting, and I think he had a right to do so. The claims of Goulding, and of Cooper, which were not assigned, will be allowed only to the extent of the payments made by the surety. The administratrix must be charged with interest on the funds in her hands, after the lapse of six months. The largest portion was placed in the hands of her father, who used it, and as to the stock in trade of the millinery establishment, she continued to apply that to her own profit. The respective parties will pay their own costs.