(5 Misc. Rep. 123.)

## In re McKAY'S ESTATE.

### In re VREELAND et al.

(Surrogate's Court, Cattaraugus County. September, 1893.)

1. BEQUEST IN LIEU OF DOWER—PRIORITY—DEFICIENCY OF ASSETS.
   A bequest to a widow in lieu of dower is not subject to abatement in case of a deficiency of assets, but will be preferred to other general legacies.

2. SAME—INTEREST.
   The rule that a legacy does not bear interest until one year from the granting of letters testamentary does not apply to a bequest in lieu of dower, which the widow elects to accept, but she is entitled to interest from testator's death.

3. SAME—INCOME OF TRUST FUND.
   Where the use of a sum of money for life is bequeathed to testator's widow, she is entitled to interest from the death of testator; and, if the widow had no means of her own, no inference that testator intended to postpone the enjoyment of the income can be drawn from the fact that the executors were not required to turn the fund over to the trustee until 18 months after testator's death.

4. SAME—ORDER OF PAYMENT.
   The fact that legacies, as stated in the will, are preceded by the words "first," "second," etc., does not show an intent on the part of testator that the legacies should be satisfied in full according to their order.

5. SAME—ABATEMENT—CIRCUMSTANCES OF LEGATEE.
   A legacy to testator's mother is not exempt from abatement merely because of the fact that, on the death of her husband, testator and her other children gave her their interests in her husband's estate for her maintenance, there being no evidence that her husband's estate is insufficient for her support, or of her actual dependence on the legacy for support.

6. EXECUTORS—LIABILITY FOR INTEREST.
   An executor who deposits funds of the estate in a bank of which he is president and a stockholder, and permits such funds to remain on deposit for a long time without attempting to secure interest thereon, and the bank uses the funds as part of its working capital, the executor is liable for interest.

Proceeding for the judicial settlement of the accounts of Edward B. Vreeland and Charles M. Dow, as executors of the will of Richard J. McKay, deceased.

James G. Johnson, for the executors.

Baker, Schwartz & Dake, for the widow and others.

E. D. Northup, for Mary Ann McKay, a legatee.

J. J. Inman, special guardian.

DAVIE, S. The will of Richard J. McKay, late of the town of Salamanca, Cattaraugus county, deceased, was admitted to probate September 3, 1891, and letters testamentary thereupon issued to Edward B. Vreeland and Charles M. Dow. The amount of the personal estate remaining for distribution is insufficient to pay the legacies in full, and the first question claiming consideration relates to the order of payment of such legacies. It is urged on behalf of the widow, the son, grandchildren, and mother of testator that their respective legacies are not subject to abatement; that it was the design of the testator, as evidenced by the terms of the

will, construed in the light of the circumstances attending its execution, that such legacies should be entitled to priority, and paid in full. The determination of this question necessitates a careful examination of the provisions of the will.

The testator first bequeaths to his widow certain specific personal property and the sum of $5,000 absolutely; also, the use of $15,000 during life, or until such time as she might remarry; also, a life estate in the house and lot where testator resided at the time of his death,—and specifically provides that these various bequests to the widow are to be accepted by her in lieu of dower. He then gives to his only son, John J. McKay, the house and lot above mentioned absolutely, after the termination of the life estate therein; also, the sum of $15,000 absolutely, to be paid in 15 equal annual payments, together with the use of said sum, or so much thereof as shall from time to time remain unpaid, such interest to be paid annually; also, the use of $10,000, to be paid semiannually during the life of said son. Upon the death or remarriage of the widow, one-third of the $15,000, the use of which is given to her, is bequeathed to Roscoe J. McKay, a minor son of the said John J. McKay, and the remaining two-thirds thereof to the children of the said John J. McKay, including the said Roscoe, in equal shares. Then follow a bequest of $2,000 to Mary Ann McKay, the mother of testator; one of $1,000 to each of two sisters; one of $2,000 to a sister-in-law; various smaller bequests to nephews and nieces and more distant relatives; two small bequests to Masonic societies; and, finally, a bequest of $2,000 to the Universalist General Conclave of the state of New York. By the terms of the will the executors were directed, within 18 months after letters testamentary were issued to them, to pay over to the Erie County Savings Bank of the city of Buffalo all sums of money, the use of which was bequeathed to any person; and said bank was designated as a trustee of such fund, and directed to pay the income and principal thereof to the several legatees entitled thereto according to the terms of the will. The bank declined to accept such trust, and, accordingly, an application was made in the month of February, 1893, on behalf of the widow and the legatee, John J. McKay, for the appointment of another trustee, which resulted in an order of the special term designating the said executor Vreeland and the legatee, John J. McKay, as such trustees, each of whom soon thereafter duly qualified in the manner prescribed by such order.

The legacies to the widow are distinctly stated to be in lieu of dower; hence she was required to make an election between her right to be endowed of the lands of her husband and the pecuniary provisions made for her by the will, (section 12, tit. 3, c. 1, pt. 2, Rev. St.;) and having failed, within one year after the death of her husband, to enter upon the lands to be assigned to her for her dower, or to commence proceedings for the recovery or assignment thereof, she is deemed to have accepted such pecuniary provisions, (section 14, tit. 3, c. 1, pt. 2, Rev. St.) The law is well settled that where a legacy is given in consideration of

the relinquishment by the legatee of some subsisting right or interest, as to a creditor in satisfaction of a debt, or to a wife in lieu of dower, such legacy is entitled to priority over general legacies which are mere bounties, for in such cases the legatee stands in the situation of a purchaser, and not a mere volunteer. Williamson v. Williamson, 6 Paige, 298; In re Dolan, 4 Redf. Sur. 511; Isenthart v. Brown, 1 Edw. Ch. 411; Blower v. Morret, 2 Ves. Sr. 421; 13 Amer. & Eng. Enc. Law, 136. Such is the rule, though the value of the legacy greatly exceeds the value of the right relinquished. In re Dolan, 4 Redf. Sur. 511; Heath v. Dendy, 1 Russ. 544; Farnum v. Bascom, 122 Mass. 282; Reed v. Reed, 9 Watts, 263; Howard v. Francis, 30 N. J. Eq. 444; Warren v. Morris, 4 Del. Ch. 289. This principle was distinctly recognized in Orton v. Orton, 3 Abb. Dec. 415, where the value of the legacy by far exceeded the dower interest, and the court says: "No doubt the rule is that a legacy in lieu of dower is to be preferred, in case of a deficiency of assets, to other general legacies." It is urged, however, in opposition to the claim of the widow to exemption of her legacy from abatement, that the evidence fails to show that the testator died seised of any estate to which the widow's right of dower could have attached, but such objection is entirely untenable. The evidence shows that on the 20th day of February, 1889, William T. Coleman and another, by a deed bearing date on that day, conveyed to the testator an undivided one-sixth part of the grantor's interest in 33 acres of land in the village of West Salamanca, known as the "Stock-Yard Property." The interest of the grantors in said lands at the time of such conveyance was a leasehold thereof, under a lease made by the Seneca nation of Indians, pursuant to the provisions of the act of congress approved February 19, 1875, and entitled "An act to authorize the Seneca nation of New York Indians to lease lands within the Cattaraugus and Allegany reservations, and to confirm existing lease," (18 Stat. c. 90, p. 330;) such lands being upon the Allegany reservation, and within the limits of the village of West Salamanca, as surveyed and located under said act. The courts have declared that the passage of this act was a constitutional exercise of the legislative authority of congress, creating a valid interest in said lands. Ryan v. Knorr, 19 Hun, 540; Wait v. Jameson, 15 Abb. N. C. 382. A recent amendment to said act authorized the renewal of such leases for the period of 99 years, (chapter 1132, Laws U. S. 1890,) and the legislature of the state of New York has defined the character of the tenure of such leases, providing that their interest "shall be for all purposes considered a freehold estate, and the owners of such leases freeholders, and the right of dower and tenant by curtesy shall attach thereto," (chapter 188, Laws 1881.) Moreover, the evidence shows that, some time prior to his death, the testator, in company with others, purchased a valuable tract of land near the city of Buffalo for speculative purposes, and for convenience in making transfers the title thereto was taken in the name of Mr. Fancher, one of their number, who thereupon executed and delivered to each of said persons a statement

in writing defining the extent of their respective interests in said lands, that of the testator being the one-twentieth part thereof, and the title remained in that condition at the time of the death of testator, so that he died seised of at least an equitable interest in such lands. At common law, dower attached only to legal estates; all kinds of uses and trusts were exempt therefrom. But the common-law rule does not prevail in this state, and many of our decisions hold, either expressly or by implication, that a widow's dower attaches to such equitable interest in lands as the husband dies seised of. Hawley v. James, 5 Paige, 318; Johnson v. Thomas, 2 Paige, 377; Church v. Church, 3 Sandf. Ch. 434; McCartee v. Teller, 2 Paige, 511. In the light of the various authorities cited, the conclusion is irresistible that the legacy to the widow in this case is entitled to priority; but her rights as such legatee are not fully established without determining the time for which she is entitled to interest on such legacy.

Under the common law, a legacy did not become payable until the expiration of one year from the death of the testator, where the time of payment was not fixed by the terms of the will; but in this state general legacies are by statute made payable at the expiration of one year from the granting of letters testamentary, (2 Rev. St. p. 90, § 43; In re McGowan, 124 N. Y. 526, 26 N. E. Rep. 1098,) and interest does not begin to run on such legacy until the principal thereof becomes legally payable, (Bradner v. Faulkner, 12 N. Y. 472.) But several well-defined exceptions to this general rule are recognized, as in case of a legacy to a minor child for support and maintenance, (King v. Talbot, 40 N. Y. 76; Brown v. Knapps, 79 N. Y. 136;) or a legacy to a creditor in satisfaction of a debt, (Clark v. Sewell, 3 Atk. 99; Lynch v. Mahoney, 2 Redf. Sur. 434;) or in case of a legacy to a widow in lieu of dower, where interest is allowed from the time of the death of the testator, (13 Amer. & Eng. Enc. Law, 172, 173; Pollard v. Pollard, 1 Allen, 490; Towle v. Swasey, 106 Mass. 100; Pollock v. Learned, 102 Mass. 49; Bullard v. Benson, 1 Dem. Sur. 486; Williamson v. Williamson, 6 Paige, 298; Seymour v. Butler, 3 Bradf. Sur. 193; Hepburn v. Hepburn, 2 Bradf. Sur. 74; Parkinson v. Parkinson, Id. 77.) Such right is not affected by the fact that the legacy exceeds the value of the dower interest. In re Combs, 3 Dem. Sur. 348. In a recent case at general term (In re Hodgman's Estate, 69 Hun, 484, 23 N. Y. Supp. 725) the court incidentally remarks that a legacy in lieu of dower does not draw interest until the widow shall have elected to accept it. This precise question, however, was not involved in that case, and the suggestion referred to seems to have been merely obiter; but if it should be claimed that the case cited is authority for holding that a legacy in lieu of dower does not draw interest until an actual acceptance, or until the expiration of one year, when the widow is deemed to have accepted it, then it will be observed that the evidence in this case shows distinct and unequivocal acts of acceptance on the part of the widow very shortly after the death of her husband. The specific legacies to her are as distinctly declared to be in lieu of dower as the general

legacies, and very soon after the probate of the will the executors delivered to the widow, and she has since then retained, the possession of the property so specifically bequeathed to her. This fact, of itself, evidences a full and complete acceptance of the pecuniary provisions of the will in her behalf. The authorities afford an additional reason for holding that the widow is entitled to interest from the death of the testator upon the $15,000, the use of which is bequeathed to her. By the terms of such bequest the widow acquires no title to or vested interest in the corpus of this fund; her right is limited to the income thereof. The language of the bequest is: "In addition to the foregoing bequest, I give and bequeath to my said wife the use of $15,000." Then follows a provision disposing of said fund after the termination of the widow's use thereof, and appointing a trustee to carry such bequest into effect. Where a sum is left in trust, with directions that the income thereof be applied tó the use of a person, the beneficiary is entitled to interest from the death of the testator. Cooke v. Meeker, 36 N. Y. 15; In re Lynch, 52 How. Pr. 367; In re Benson, 96 N. Y. 511; Williamson v. Williamson, 6 Paige, 298.

No inference can be drawn that the testator designed to postpone the beneficial enjoyment of the income from this sum for the period of 18 months from the fact that the executors are not required to turn said fund over to the trustees until the expiration of that time. The widow had no means of her own; her specific bequests were not of a character to afford her support and maintenance; she was as much dependent upon the income from this sum for her support immediately after the death of the husband as at the end of 18 months. The reasoning of Justice Daniels, in Pierce v. Chamberlain, 41 How. Pr. 501, is entirely applicable to this case, and it must be accordingly held—First, that the widow is entitled to the payment of her legacies in full; second, that she is entitled to interest on the $5,000 bequeathed to her, from the death of her husband to the time the same is actually paid over to her; third, that she is entitled to interest on the $15,000 from the death of her husband until such time as the executors shall turn said fund over to the trustees.

I am unable to discover from the terms of the will, or from a careful consideration of the other evidence in the case, any valid reason for exempting any of the other legacies from abatement. The son, John J. McKay, cannot invoke the protection of the authorities holding that a legacy to one for support and maintenance, (Scofield v. Adams, 12 Hun, 370,) or for the education of a child or other relative, (Petrie v. Petrie, 7 Lans. 90,) are not liable to abatement. At the time of the execution of the will this son was an adult, possessed of means of his own, of fair business capacity, and entirely competent to provide for himself and family, and the testator, by insurance upon his own life, had provided the son with a considerable sum of money which was paid to him very shortly after the death of the testator. The relationship between testator and these legatees is, in and of itself, of no consequence in determining this question of liability of the legacies to abate-

ment. Towle v. Swasey, 106 Mass. 108; Richardson v. Hall, 124 Mass. 228; Titus v. Titus, 26 N. J. Eq. 111.

It is urged with a considerable degree of earnestness, on behalf of the son and grandchildren, that the order in which the various legacies appear in the will, being preceded, respectively, by the numerals "first," "second," "third," etc., evidences a design on the part of testator that said legacies should be satisfied in full according to their order; that is, that they are entitled to priority according to their position. I am unable to find any decision in this state which in any manner sustains such claim, while the decisions of the courts of other states are directly to the contrary. It has been held that the words "in the first place," "in the next place," or "afterwards," used in introducing the legacies, create no priority, either inter se or over other general legacies. Gray's Estate, 13 Phila. 246; Everett v. Carr, 59 Me. 325, 330; Wells v. Barwick, 50 Law J. Ch. 241. See, also, Rop. Leg. (Amer. Ed.) 426. The situation cannot be better stated than by quoting from the authority last cited:

"If a testator expressed himself in the following manner: 'Imprimis, [or 'in the first place,'] I give such a legacy to A.; and, in the next place, [or 'afterwards,'] I give such a sum of money to B.,'—these words or variety of expression will neither give A. a preference to B., nor either of them a priority to other general legatees, so as to exempt them from the obligation of abating with such other legatees. The reason is that the words merely point out the order in which the bequests are made in succession, and do not impart with certainty an intention to prefer one to another. The possible intent of the testator to give a preference by the language he adopted is judicially insufficient to accomplish a purpose so obscurely or doubtfully intimated."

It should, however, be remembered, in making the computation in the case at bar, that the son is entitled to interest from the death of the testator upon the fund of which he is given the use, or such portion thereof as may remain after the pro rata abatement. The only fact, independent of the provisions of the will, suggested as a reason for granting immunity from abatement to the legacy of the mother, is that, after the death of her husband, her children, including the testator herein, executed an instrument in writing whereby they devoted their respective interests in the estate of their father to the support and maintenance of their mother, and that regular monthly payments had been made to her out of said estate, by the administrator thereof, for that purpose. This single fact, unaccompanied by any suggestion as to the extent of the father's estate or the actual dependence of the mother upon the legacy for her support, is insufficient to justify a conclusion that her legacy is entitled to priority.

The remaining question relates to the liability of the executors for interest. The account filed contains no credits to the estate for interest upon the funds of the estate after they came into the hands of the executors. There is no conflict whatever in the evidence bearing upon this question. The testator was, at the time of his death, the president of the Salamanca National Bank. At the time of the execution of the will, the executors were stockholders and directors of such bank. Directly after the death of testator the said executor Vreeland became president of the bank, and each of

said executors have ever since continued their interest in and connection with the bank. The testator, at the time of his death, had a credit balance in said bank to the amount of $5,640. This sum was credited to the executors upon the books of the bank directly after the issuance of letters to them. The assets of the estate consisted, in part, of money derived from insurance upon the life of testator, $23,000 of which came into the executors' hands September 21, 1891, and $2,000 thereof on the 25th of the same month. A large share of these funds, together with such other moneys as came to the hands of the executors in the course of administration, were left in said bank on open deposit from the time of the receipt thereof by executors to the filing of their account, on the 17th day of April, 1893. The daily balances to the credit of the executors, as shown by the books of the bank during said period, were never less than $18,800, and during the most of the time exceeded $30,000. These moneys were mingled with the other funds of the bank, and used by it in the prosecution of its general loan and discount business. During such period, the bank paid a semiannual dividend upon its capital stock of 5 per cent., the executors receiving their share thereof. The executors did not make, or attempt to make, any arrangement with the bank, whereby they were to be allowed interest upon such fund, nor did they make application to any other bank for the purpose of ascertaining whether interest could be obtained on such funds. It was the custom of the Salamanca National Bank, during said period, to allow interest at the rate of 3 per cent. per annum upon all sums deposited upon a certificate of deposit if left three months, and 4 per cent. per annum if left six months, but not to allow any interest upon deposits unless certificates were issued. The evidence shows that various banks in the city of Buffalo during the same period were allowing interest at the rate of 4 per cent. per annum upon quarterly balances, and some of such banks the same rate of interest upon monthly balances, and that said banks were entirely available for the use of the executors. While the liability of executors and administrators for interest must depend largely upon the particular circumstances of each individual case, there are certain well-defined principles applicable thereto. The principle is elementary that all profits derived directly or indirectly from the assets of the estate, either spontaneously or through the act of the representative, will be charged against him in the final settlement of the estate. 7 Amer. & Eng. Enc. Law, 426. In Dunscomb v. Dunscomb, 1 Johns. Ch. 508, it was said:

"The rule is settled that executors and all other trustees are chargeable with interest if they have made use of the money themselves, or have been negligent either in not paying the money over, or in not investing it or loaning it so as to render it productive."

This rule has been followed in a long line of well-considered cases, among which are Brown v. Rickets, 4 Johns. Ch. 303; Manning v. Manning, 1 Johns. Ch. 535; Schieffelin v. Stewart, Id. 620; Mumford v. Murray, 6 Johns. Ch. 1; Kellett v. Rathbun, 4 Paige, 102; De Peyster v. Clarkson, 2 Wend. 78; Spear v. Tinkham, 2 Barb. Ch. 211. Some recent cases hold that a trustee is not chargeable with in-

terest solely because he deposits the trust moneys with his own, or uses them in his business; that there must be, in addition, a breach of trust,—a neglect or refusal to invest the funds at the time, or in the manner, in which the instrument creating the trust points out or the law directs; but it is asserted that "the law exacts of a trustee fidelity to his trust. If he is guilty of fraud or the mismanagement of the trust fund, or is guilty of a breach of trust, or has used the trust funds for his own purposes and made a profit therefrom, he may be compelled to pay interest." Price v. Holman, 135 N. Y. 133, 32 N. E. Rep. 124. The liability of an executor is equally as great if he permits the use of the trust funds in the business of a firm of which he is a member as though he used them in his individual business. In re Myers, 131 N. Y. 417, 30 N. E. Rep. 135. A parity of reasoning would hold an executor accountable, who, being the president and director of a bank, and entitled as a stockholder to participate in the profits of its business, uses or permits the use, for a considerable length of time, of trust funds, as a part of the working capital of his bank. But the contestants in this case do not seek to charge the executors with interest upon that theory, nor to recover from them the full legal rate of interest for the entire time. They simply ask that the executors be required to account for and be charged with such an amount of interest as the evidence clearly shows could have been obtained by the exercise of ordinary prudence. By the terms of the will, the executors were not required to pay over any portion of the $25,000, the use of which was bequeathed, until the end of 18 months from their appointment. They were absolutely certain of being able to control that fund, or the greater part thereof, during that period. On the 4th day of March, 1892, they had sufficient funds in their hands to have justified them in setting apart at least $20,000, and making some proper investment of the same, in order that such fund might be productive of income to some extent. They were, of course, entitled to a reasonable length of time in which to familiarize themselves with the affairs of the estate before making any investment. Such time cannot be determined by any arbitrary rules, but must depend upon the circumstances of each particular case. While the testator was a careful and prudent business man, and the affairs of his estate generally in excellent condition, there were certain contingent liabilities, arising from indorsements made by testator, which it became the duty of the executors to anticipate and provide for; and, from a careful review of all the evidence bearing upon this question, I am of the opinion that the executors were justified in holding such funds as had come into their hands, without investing any part thereof, for a period of six months from their appointment, but that such period was entirely sufficient to enable them to secure an investment of said $20,000. Halsted v. Hyman, 3 Bradf. Sur. 426; Dunscomb v. Dunscomb, 1 Johns. Ch. 508; Gilman v. Gilman, 2 Lans. 1. The executors should be charged with interest upon $20,000 at the rate of 4 per cent. per annum from the 4th day of March, 1892, that being six months after their appointment, to the date of filing their account. A decree will be entered accordingly.