GREGG *v.* GABBERT.

Opinion delivered October 3, 1896.

TRUST—ACCOUNTING—ESTOPPEL.—Where a trustee, having funds to invest, obtains from the beneficiary permission to use the funds at a lower rate of interest than could have been obtained on safe security, the beneficiary, after receiving such interest without objection for a number of years, is estopped from claiming additional interest for the use of the money during such period.

SAME—COMMISSIONS OF TRUSTEE.—Where a trustee who has funds to invest obtains permission of the beneficiary to retain them, he is not entitled to commisssions on the money so retained, as there was no disbursement of the money.

SAME—TAXES.—Where a trustee, with the beneficiary's consent, borrows the trust funds at a low rate of interest, it is in the discretion of the chancellor to disallow him the taxes paid by him on such funds.

Appeal from Washington Circuit Court in Chancery.

EDWARD S. McDANIEL, Judge.

*Rose, Hemingway & Rose* for appellants.

1. If there was any doubt about the validity of the contract of 1888, it has been ratified by plaintiff. 30 Ark. 453; 32 *id.* 346; 47 *id.* 301; *Id.* 320; 50 *id.* 201; 53 *id.* 514; 11 Ves. 318; 2 Pom. Eq. Jur. sec. 965.

2. The complaint should have been dismissed for laches. 2 Pom. Eq. Jur. 965; 55 Ark. 92; *Id.* 155.

3. By statute, administrators are entitled to commissions on all sums paid out. Sand. & H. Dig., sec. 134. Considered as trustees, the two administrators would be entitled to compensation. 39 Ark. 430; Perry, Trusts, secs. 914, 918, 919.

*J. D. Walker, J. W. Walker* and *D. W. Watkins*, for appellee.

1. Every contract or transaction had between a trustee and his *cestui que trust* is constructively fraudulent. 2 Pom. Eq. Jur. sec. 956; Bigelow, Fraud, p. 315; Story, Eq. Pl. sec. 252; 54 Ark. 624.

2. The mere acceptance of the payments of interest under the contract,—a contract not authorized by law, —is not a ratification, and appellee is not estopped. To make good a voidable contract by confirmation, ratification, or acquiescence, the *cestui que trust* must be free, and the relation of *cestui que trust* and trustee at an end. 2 Pom. Eq. Jur. secs. 964, 965, 850. See also 2 Perry, Trusts, (3 Ed.), sec. 851; 91 Am. Dec. 177; 1 Story, Eq. (12 Ed.) secs 322, 322*a;* 1 Story, Eq. (12 Ed.) sec. 465; 1 Perry, Trusts, sec. 467.

3. Appellee is not seeking to keep the advantage derived from the sale of the bonds and repudiate the burdens. There is no question of election here. The sale of the bonds and the contract for interest are separate transactions. The one was beneficial to the estate, and the other unconscionable and voidable. 2 Story, Eq. (12 Ed.), sec. 1075; 1 Pom. Eq. Jur. secs. 395, 465; 50 Ark. 201. The only effect of appellee's agreement

to the sale of the bonds would be to estop her from suing for any advance the bonds might have made during the trust.

4. The case of *Brinkley* v. *Willis*, 21 Ark. 1, is an answer to the plea of laches. Less than five years had elapsed from the making of the contract and the filing of the complaint. 2 Perry, Trusts, sec. 863; Wood on Lim. p. 413.

5. Under the will of Wilson, Gregg was executor and also trustee and guardian. He was trustee of an express trust. As executor, he should have wound up the estate, so far as the probate court was concerned, within three years. Const. 1874, art. 7, sec. 34; Sand. & H. Dig., sec. 220; *Id.* sec. 108, clause 5; 2 Woerner, Adm. sec. 151. L. W. Gregg, as administrator of Wilson's estate, had no authority to intermeddle with the trust. Chancery alone has jurisdiction in such matters. 1 Woerner, Adm. 346; 104 N. Y. 250; 1 Pom. Eq. Jur. sec. 100; *Ib.* sec. 351; 3 Pom. Eq. Jur. sec. 1154; Brown on Jur. sec. 130; 33 Ark. 727; 34 *id.* 63; 40 *id.* 393; 42 *id.* 190; 15 Wall. 211. The court properly appointed Wilson trustee, and ordered L. W. Gregg to turn over the trust fund. Schouler, Ex. & Adm., secs. 245, 247; 6 Yerg. 220; 2 Woerner, Adm. p. 720. A court of equity has power to remove a trustee and appoint another. 2 Pom. Eq. Jur., secs. 1086, 1087; 1 Perry, Trusts, secs. 275, 276–7; 2 *id.* secs. 817, 818; 2 Story, Eq. Jur. (12 Ed.), secs. 1287–8, 1289*b*.

6. The contract was unlawful, in violation of duty as trustee, and will not be permitted to stand. Aside from the question of actual fraud, the relationship of the parties, their dealings, the fact |that appellee had barely reached her majority, and that Gregg was her legal and confidential adviser, in whom she reposed all confidence, raise a condition of presumptive fraud which casts the burden of disproving upon defendants. 2 Pom.

Eq. Jur. secs. 956-7-8, 961, 1075; 1 Story, Eq. (12 Ed.), sec. 465; 1 Perry, Trusts (3 Ed.), secs. 194-5-6-7; 1 Bigelow, Fraud, 315-336; 54 Ark. 627; 4 Johns. Ch. 303; 4 How. (U. S.), 503; 100 Am. Dec. 314; 1 Lead. Cases in Eq. 53; 92 Am. Dec. 637; 1 Perry, Trusts, secs. 196-7. Having unlawfully invested her money, plaintiff is entitled to the profits, or the highest rate of interest. 2 Pom. Eq. Jur. secs. 1072, 1075, 1077, 1080; 1 Perry, Trusts, secs. 427 to 433, 452, 463, 464, 466-7, 470-1-2; 1 Suth. Dam. pp. 622-3; 3 How. (U. S.), 401; 16 How. (U. S.), 535; Mechem, Agency, 469; 1 Johns. Chy. 508; 1 Hoffman, Ch. 267; 4 Vesey, Jr., 620; 2 Pom. Eq. Jur. sec. 1076, *et seq.*, 5 Rawle, 323; 10 Yerger, 160.

7. The commissions were properly disallowed. 23 Ark. 592; 2 Pom. Eq. Jur. (3 Ed.) sec. 919; 9 S. C. 465; 17 Am. Dec. 257.

*Rose, Hemingway & Rose,* in reply.

1. The change of securities was authorized by the will, and it was accomplished by agreement of all parties interested. Perry, Trusts, sec. 920.

2. Seventeen payments were made under this contract, ten of them after plaintiff was married and had the advice of her husband. If 17 payments, voluntarily received, will not amount to a ratification, with full knowledge of all the facts, then 17,000 would be no more effectual. 52 Ark. 467; 106 U. S. 468; 21 Wall. 178; 91 U. S. 592; 17 Wall. 78; 99 U. S. 201; 143 *id.* 553; Bigelow, Est. 685; Perry, Trusts, sec. 849; 2 Pom. Eq. sec. 820.

HUGHES, J. This is a bill in chancery to compel the executors of the will of Lafayette Gregg to account for profits realized by the testator upon trust funds bequeathed by William T. Wilson to his wife, his daughter (the plaintiff), and two sons; the two sons having

died before the institution of this suit, and the plaintiff having, under the provisions of the will, succeeded to the interest bequeathed to them. The funds consisted originally of money, which, under the provisions of the will, Gregg (the trustee) converted into United States bonds, amounting to $18,000 principal.

Gregg was appointed executor of Wilson's will, as well as trustee to purchase these bonds and manage his estate for the best interest of his children, who were legatees, until they should, respectively, reach the age of thirty years. Not a great while after the purchase of the bonds, Gregg procured an order of the probate court directing him to sell said bonds, which he shortly afterwards did, realizing therefor in cash $23,720. Soon after the sale of the bonds, Gregg entered into a contract with the legatees entitled to the fund under the will whereby he secured to himself the right to hold and use said funds at an agreed interest of $900 per annum for the use thereof.

The bonds were sold by Gregg at a premium of 28 cents on the dollar, and such bonds afterwards declined to 10 cents premium on the dollar. The sale was a good one, and perhaps the best that could have been made for the interest of the legatees, and we incline to the opinion that in making the sale the executor was not without the power to do so, under the discretion with which he was invested by the will, and the order of the probate court, and the consent of the *cestui que trust*. When the executor had made this advantageous sale of the bonds, it was his duty, acting for the best interest of the legatees, for whom he was trustee, to reinvest the funds upon good and approved security at the highest rate of interest obtainable upon that character of security. But, instead of doing this, he contracted with the *cestui que trust* for the privilege of using this fund himself, upon his personal obligation, without

security, at less than 4 per cent. per annum interest, and, as the proof shows, invested $17,000 of it in a bank on his own account. What profit was made by the bank is not shown, but it is shown that the interest on money loaned at the time, and up to the time of this suit, was as high as 10 per cent. per annum.

After the contract was made with the legatees, they continued to receive the interest on the $23,720 into which the bonds had been converted, which interest was promptly paid by Gregg until, at the commencement of this suit, seventeen payments had been received by the plaintiff under the contract. She now says, however, that she was not advised, and did not know, what the usual interest on money was. But she was *sui juris* when she entered into the contract, and eleven payments of interest were received by her under it, after her marriage.

As to the payments made before she brought her suit, without objections upon her part, she cannot be heard to complain. She acquiesced in the contract made with Gregg up to the time she brought this suit. It is not shown that any positive undue influence was brought to bear upon her, and, being *sui juris*, she had opportunities, no doubt, to have ascertained what her rights were, and might have asserted them.

But we are of the opinion that Gregg did wrong in contracting with the *cestui que trust* to be allowed to hold and use the trust fund himself, at a rate of interest much below what might have been obtained for the use of the money upon safe security. It was his duty to manage and invest the funds in his hands as trustee for the interest of the *cestui que trust*, and not to use it for his own advantage. A trustee is not allowed to speculate for his own interest upon trust funds, or to make profit out of his position as trustee. 1 Perry, Trusts, secs. 197, 427, and cases cited: secs. 430, 431, and cases;

*Brown* v. *Rickets*, 4 Johns. Ch. 306. In England he is not even allowed compensation for his services, but the rule is different in America. Hill, Trustees, *574, 576, 577; 1 Perry, Trusts, sec. 432; 2 *ib.* sec. 904.

As early as 1799, in the case *Piety* v. *Stace*, 4 Vesey, Jr., 620, the master of the rolls said: "The rules are now so well understood that it is a waste of time to repeat them. An executor, if he will take upon himself to act with regard to the testator's property in any other manner than his trust requires, puts himself in this situation, that he cannot possibly be gainer by it. Any gain must be for the benefit of his *cestui que trust;* and if there is any loss upon the capital, as if the stocks rise ever so much, he must replace it, in order that the *cestui que trust* may sustain no damage from his conduct. Every farthing more than the dividends, that lay in his hands, is just so much gain to himself. For every shilling he got by any of these transactions, he shall pay interest at the rate of 5 per cent. for every minute it lay in his hands. As to what he lent his son, paying only the dividends of the stock, he ought to have lent it at 5 per cent. What business had he to lend it to his son upon such terms? There is a breach of trust in that respect. He must therefore pay 5 per cent. upon the whole. I suppose, he imagined he might make an advantage to himself, if he could do so without any disadvantage to the *cestuis que trust*, which is the notion of trustees; but he must pay for that."

Sutherland says: "A trustee who has the custody and management of funds, and uses them in his private business, realizes interest by lending, neglects to render the fund productive when it was his duty to do so; fails to account when called upon, or is otherwise guilty of neglect, evasion, fraud, or any wrong administration,

will be charged with interest, and even compound interest, according to the culpability of his conduct." 1 Suth. Dam. p. 622; *In the Matter of Harland's Accounts*, 5 Rawle, 323; *Jones* v. *Ward*, 10 Yerger, 160; 1 Perry, Trusts, sec. 464, *et seq.*

Pomeroy says: "The beneficiary is always entitled to claim and receive the actual profits, when they can be ascertained. If it is difficult to distinguish the fund, so as to tell the amount of profits or proceeds which the beneficiaries share, the court may not only require the trustee to restore the principal which he has appropriated, but, in the place of the profits, may compel him to pay interest compounded, with rests annual or semi-annual, or even more frequent, as the extent of his bad faith may seem to demand." 2 Pomeroy, Eq. Jur. sec. 1076, *et seq.*

Under the circumstances of this case, the plaintiff was not barred by laches or limitations when she brought this suit. *Brinkley* v. *Willis*, 22 Ark. 1. But we are of the opinion that there is error in the decree of the court below in refusing, in effect, to hold that, from the date of the contract of L. Gregg with the *cestui que trust* to the time of the filing of the complaint in this case, the plaintiff was bound by the payments made to and accepted by her under it, and cannot now be heard to complain as to the interest she voluntarily accepted upon the funds in the hands of L. Gregg as trustee paid to her according to said contract. She is estopped by her acceptance, and cannot undo what has been done. *Kent* v. *Jackson*, 14 Beav. 384; 2 Perry on Trusts, sec. 870; Hill on Trustees, (Star p. 382, and cases cited); 1 Perry on Trusts, sec. 467.

In other respects the decree of the chancellor is affirmed, and the decree will be modified so that the executors of L. Gregg shall pay to R. J. Wilson, trustee appointed by the chancery court, such amounts as

may be found due the trust estate, calculating interest upon the amount that was due and unpaid at and after the filing of the bill in this cause at the rate of interest fixed by the chancellor below, which was 6 per cent. per annum.

There can be no doubt that, in appointing some other person to act as trustee, instead of L. W. Gregg, one of the executors of the will of L. Gregg deceased, the chancellor properly exercised his discretion, as the interest of the estate of L. Gregg is not consistent with that of the estate of Wilson, and the confidence reposed in L. Gregg by his appointment by Wilson as trustee for his children was a personal trust and confidence, which was not reposed in L. W. Gregg.

There is no error in the court's refusal to allow the estate of L. Gregg commissions on money he retained in his hands and used under the contract made with the legatees, as there was no disbursement of this sum; nor is there any error in the refusal of the court to credit his estate with the taxes paid by it upon the moneys in his hands, the proceeds of the bonds. Ordinarily, a trustee is allowed for taxes upon the trust property, and for all necessary disbursements incident to its management. But, under the circumstances of this case, it was within the discretion of the chancellor to allow or refuse to allow these taxes, and we do not think he abused his discretion, as he may have considered that the money was worth six per cent. interest and the taxes.

The cause is reversed and remanded, with directions to the chancery court to enter a decree below in accordance with this opinion. The parties will each pay half the costs in this court, and the appellants all the costs of the court below.

BATTLE, J., absent.