**MARKER, ESTATE OF, In Re**

Ohio Appeals, 2nd Dist, Darke Co

No 510. Decided April 21, 1937

S. E. Mote, Greenville, for certain creditors of the estate of V. S. Marker, deceased.

A. Alvin North, Greenville, for heirs at law of V. S. Marker, deceased.

T. A. Billingsley, Greenville, for the administrators and for T. A. Billingsley, individually.

## OPINION

By THE COURT

This is an appeal on law from a judgment of the Common Pleas Court overruling exceptions to the second account of J. H. Menke and J. E. Williams, administrators de bonis non of the estate of V. S. Marker, deceased.

Exceptions consisting of two branches were filed by S. E. Mote, attorney for certain named creditors of the estate of V. S. Marker, deceased, and consisting of twelve branches by Daisy V. Marker, George H. Marker and Lester B. Marker, heirs at law of V. S. Marker, deceased.

The exceptions came on for hearing and as the matter progressed and at the conclusion thereof the court was required to pass upon two branches only of the exceptions, namely: (1) that the administrators failed to charge themselves with interest on the funds of the estate which came into their hands as administrators and (2) that the sums by way of compensation to the administrators and attorney fees to their counsel allowed by the Probate Court and for which credit was taken in the second account of the administrators were excessive, illegal and beyond the value of the services rendered.

It was the claim of the exceptors that the administrators had not made a bona fide effort to promptly settle the estate and make distribution of the assets thereof; that delay was occasioned in the management of the estate, for which the administrators were responsible; that the administrators were cashiers of banks, in position to invest and collect interest on the funds and had used the funds upon which they could have, by the exercise of reasonable diligence, obtained no less than 7% annual interest.

It was the claim of the administrators that upon their appointment in 1927 it was their purpose to promptly distribute the money and close the estate; that the delay with which they were confronted and which occurred during the whole of their administration was occasioned by suits instituted by the Markers, who filed exceptions to the second account and that but for this delay the estate would long since have been terminated.

The Probate Judge upon an application filed June 6, 1934, allowed to counsel for the administrators the sum of $15,000.00, which was in full of all legal services rendered to the administrators from the date of their appointment and to include all legal services to be rendered until and including the settlement of their final account and final distribution made. A short time thereafter on an application filed, June 8, 1934, the Probate Judge allowed to the administrators the sum of $9,000.00, in full of their ordinary and extraordinary services as such administrators. These allowances for legal services and administrators' compensation were carried as a part of the second account filed June 26, 1935 as follows:

"Legal Services since
First Account, 1929 ...........$12914.98
"Administrators' Compensation . 6814.88"

The exceptions filed in the Probate Court were certified to the Common Pleas Court for hearing and came on and in due time were presented at considerable length.

We have been favored with the opinion of the trial court. We do not propose to re-state in detail the facts appearing in the record of the hearing on the exceptions, but announce as briefly as possible the conclusion to which we have come.

We consider first the exceptions to the allowances to counsel for legal services and to the administrators for ordinary and extraordinary services.

There can be no doubt that this estate in its administration has presented many difficulties, legal and otherwise. We shall not recount the cases which were filed in the various courts, some of which pro-

ceeded to the reviewing courts, nor the many matters which required attention of the administrators and their counsel in Probate Court and in the orderly administration of the Marker estate. Of course, it is impossible for the administrators or their counsel to present upon the record the manifold requirements of their duties, occasioned by the unusual developments in the administration of this estate, the mass of litigation and legal questions arising in such actions and by reason thereof, with which these fiduciaries were almost continuously confronted. Besides the proof of the administrators delienating many of the matters coming to their attention in the private pursuit of their duties, the number of cases to which they were parties and other questions to which they were required to give attention, together with the services of legal counsel as set forth in considerable detail, there was also offered the opinion evidence of a number of well-rated lawyers, who testified that the amounts allowed to the administrators and their counsel were fixed at the minimum and were reasonable.

Upon the whole record we can not say that the trial judge was not within his prerogatives and unsupported ■ by the record in approving the allowances made to counsel and the administrators. We find no error in overruling this excepion to the second account.

We next consider the second exception, namely, that the administrators should be required to account for interest on the moneys which came into their hands as administrators since their appointment. This exception presents two questions: (1) Does the record require that the administrators be charged with interest in some amount? (2) If so, in what amount should they be charged?

Both administrators were cashiers of banks in the City of Greenville and it may be assumed were selected in part, at least, because of the business ability required in fulfilling the duties of the offices which they held in these financial institutions. They had a full and special appreciation of the earning power of money by time deposits and loans and likewise were in position to readily place funds at interest upon desirable loans. The funds were held during a period when money was in demand. These administrators were the third appointees to have served in like capacity since the death of V. S. Marker. During the tenure of their immediate predecessors

litigation, some of which was pending when these administrators qualified, had arisen involving the estate, which had assumed such proportions that the Probate Court in two entries had taken cognizance thereof and had instructed and directed the former administrators that:

"The said estate of V. S. Marker is in the process of litigation concerning various subject matters and it is ordered and adjudged that the said funds be left invested as they now are at the rate of 4% until occasion requires their payment according to law."

This is a part of an entry approving and confirming the second account of George W. Sigafoos and Martin B. Trainer, administrators de bonis non of the estate of V. S. Marker, deceased, of date March 5, 1925 and a like entry had also appeared under date of January 18, 1924 upon a hearing to exceptions to an account, in this language:

"But the court finds that said estate is in process of litigation concerning various subject matters. It is ordered and adjudged that the said funds be left invested as they now are at the rate of 4% until occasion requires their payment according to the law."

The present administrators insist that they knew nothing of these orders. In our judgment it is not controlling whether or not the administrators had knowledge of these orders or the court had authority to make them.

When the present administrators came into $49,258.08 from their predecessors they immediately withdrew a sum in excess of $20,000.00, which had been invested by the former administrators and continued by them under investment by order of the court and placed it together with the remainder of the fund in proportion of one-half thereof in each of the banks of which an administrator was cashier in a general account. Their first account showed $62,-130.96 on hands. Almost $94,000 will have been handled by the administrators before final settlement. Neither the $20,000 taken off deposit at interest nor any sum that thereafter came into the possession of the administrators was placed in an account where it would draw any interest, nor was any part thereof ever loaned so as to produce any return, although interest was allowed on every claim upon which the dividend was declared.

We have heretofore stated the respective claims of the parties concerning the cause for the delay in the settlement of the Marker estate. We do not believe that determination of this question is decisive of the obligation of the administrators to invest the funds. If it were, we could readily support a finding that in considerable part, at least, the delays were caused by the filing of exceptions and the institution and prosecution of suits brought by the Marker heirs at law.

The vital question is: Was the fact that delay for a considerable period of time in the disbursement of all or any substantial part of the funds on hands reasonably certain and so apparent to the administrators that they are charged with knowledge thereof? If so, it was their duty to assure some return to the estate from the moneys in their hands.

We reach the conclusion, upon a careful consideration of this record that the administrators were put on notice at all times that a settlement of the estate could not be concluded for such a period of time as that they would have opportunity safely to invest the funds which they had in their possession so as to return interest to the estate. It could well be found that there never has been a time since the appointment of these administrators when it should not have been apparent to anyone exercising ordinary prudence that a settlement of the Marker estate was at least several months in the future.

The estate on application of the administrators was declared insolvent.

Independent of the suits and exceptions to the former accounts, the administrators prepared, made computation of and disbursed a 10% dividend in 1934, which was estimated up to January 1, 1930. This in itself, independent of any litigation, disclosed a purpose to withhold termination of the estate until a later date, which in the very nature of things would have been months away.

It further appeared that counsel for the administrators felt it unsafe to proceed with the list of creditors as turned over to the administrators from their predecessors and that much research was required as a prerequisite to the making up of a correct list. This postponed any distribution and it was practicable to determine at least, the probable minimum delay which would be occasioned by getting the partial distribution in proper shape to disburse. Then, too, the course of litigation and the time to be consumed thereby was susceptible of approximate determination. If a case is instituted in Common Pleas Court the time that will be required to prosecute it to judgment can be reasonably estimated. When a proceeding is lodged in the Court of Appeals, inasmuch as the court meets in Darke County at stated intervals, six months apart, the probable delay by reason thereof is susceptible of determination. Upon the whole we are satisfied that independent of fault causing delay the administrators themselves or by their counsel at all times had every reason to know that they would be safe in investing the funds in their hands for several months at the least.

The sale of the 31 parcels of real estate was in installments. The position of the administrators upon this record is well defined by the questions propounded and answers made by their own counsel and by the testimony of the administrators, viz: that though the delay was obvious it was no fault of theirs.

The law respecting the obligation of administrators to invest funds in their hands is well defined. We quote from Rockel Probate Practice, 4th Edition, page 439:

"If he (the administrator) knows he cannot close the estate for a considerable period it is his duty to place the money at interest, although no statute requires him to do so." Citing Perkins v Hollister, 59 Vt. 348 and at page 443:

"It might be well for an administrator or executor, if he has any reason to believe that the funds in his hands cannot be distributed for more than six months, to make application to the Probate Court, setting out such fact and asking the court for authority to invest the money in some proper manner."

And quoting from Redf. Sur. Law & Practice, page 500, Judge Rockel at pages 441-442 says:

"The rule is that during the period of getting in the estate, paying the debts, etc., preliminary to final distributions or a permanent investment, * * *, whether the period be long or short, the representative is held to the same degree of care which a man of ordinary prudence would exercise, under the same circumstances, with respect to placing his own money so that it might earn interest. If the court determine that, under the circumstances of the particular case, it was a breach of duty for the representaive to let the money lie idle, he may

be charged on his account for the amount of interest which, with reasonable diligence, he might have received."

A re-statement of the rule controlling though not effective as to the period of this administration covered by the exceptions, is found in §10506-46 GC of our new Probate Code.

"A fiduciary who has funds belonging to the trust not required for current expenditures shall, unless otherwise ordered by the Probate Court, invest or deposit such funds according to law within a reasonable time and on failure so to do such fiduciary shall account to the trust for such loss of interest as may be found by the court to be due to his negligence."

The preceding section, §10506-45 GC, requires the administrator to deposit the trust funds in such class of account as will be most advantageous to the trust and each depository shall pay interest at the highest rate customarily paid to its patrons on deposits in accounts of the same class.

The trial court should have required the administrators to pay some interest on some of the funds in their hands and a failure so to hold was manifestly against the weight of the evidence.

The second question, then, is: Upon what sum or sums of money and at what rate of interest should the administrators be required to pay? The record would permit a finding of certain sums upon which the administrators clearly should be required to pay interest, but it is probable if when this matter is re-tried more attention in detail can be given to the amounts of the deposits when made and what proportion of them was on hands for a sufficient length of time as that the administrators should be required to pay interest upon them.

Counsel for the exceptors undertook in several instances to prove the amount of interest that was paid by the banks of which the administrators were cashiers upon time deposits and upon loans for six months or longer. None of this testimony was accepted and in refusing to hear it the court committed prejudicial error. It was proper that this information be taken by the trial judge in determining under all the circumstances in the case what rate of interest should be chargeable.

We do not desire to foreclose the judge if exceptions are again heard from determining that there was no period during

which the executors would not be required to pay interest on the funds in their hands. As to the sums allowed the administrators by way of ordinary and extraordinary compensation and to the attorney for legal services there should be no charge of interest after the date when said sums were allowed. We have not, it is not required and probably would not be the proper thing for us to undertake in detail to define the amounts of money upon which the administrators should be required to pay interest. This is in the field of judicial prerogative of the trial judge which we only consider on review.

We are confronted with the case of Cooch et v Irwin, Admr., 7 Oh St 23, wherein in the syllabus it is said:

"An administrator is not chargeable with interest on money which comes into his hands as the representative of a deceased person, unless he employ it in his own business, derive some benefit from the loan of it, or is guilty of unreasonable and unnecessary delay in the settlement of his accounts with the court."

A strict application of the letter of this quoted portion of the syllabus might absolve these administrators from any liability whatever to account for any return on the funds which they had in their possession because of unnecessary or unreasonable delay in the settlement of their accounts. However, it is well recognized that the syllabus states the law of the case and must be read with the facts upon which it is predicated. So considering the Cooch case we find no conflict between the position we take and the law there pronounced.

As these exceptions were presented, that one relating to the failure of the administrators to charge themselves with interest was first heard and the testimony concluded before the second exception was taken up. Upon direct examination by counsel for the administrators, Judge Miles very carefully set forth the proceedings and entries which appeared on the dockets in the Probate Court. Counsel for both parties questioned witnesses respecting the many cases which were considered and determined in the various courts other than the Probate Court and gave their version of the issues presented by the cases and drew their own conclusions touching the effect of these cases upon a prompt and safe distribution of the funds of the Marker estate. In one or two places in the record it is suggested

that by agreement all of the papers in the cases should be admitted and so stipulated, but nowhere were the papers or any of them, excepting only the Ronzo Smith record and certain accounts, identified, offered or admitted in evidence as exhibits on the hearing of this exception, nor are they among the papers. We do not, then, have before us these cases and cannot determine their effect upon a material question, namely, whether or not the delay occasioned thereby justified the administrators in withholding the distribution made to the extent to which it was deferred. We are satisfied, without respect to the effect of these actions on the question of delay, that the administrators would be chargeable with interest but realize that the issues presented in these cases do have relation to the extent to which the administrators should be charged.

Upon rehearing of the exception here under consideration, if had, the court can and should with particularity analyze the respective claims of each party concerning the effect of the pendency of these cases upon the delay by the administrators in making any distribution up to a certain time and in withholding further or final distribution.

Counsel for the exceptors undertook to develop a line of testimony tending to show that the administrators benefitted as cashiers and stockholders in their respective banks from the amount of money which they were able to deposit in their institutions by reason of their fiduciary relationship. This hypothesis is too far-fetched to be tenable and we are satisfied was not susceptible of proof. Especially is it without significance in view of the fact that the administrators under the law acting as trustees are bound to conduct the business of the trust to the advantage of those for whom it is administered and in this case the requisite that they be required to account for an appropriate sum of interest is the only practical manner of arriving at the amount which they should be charged.

Affirmance of the second account as it relates to the compensation to the administrators is affirmed upon the theory that eventually they will be required to pay interest upon the funds which they should have invested, otherwise the allowance would not be justified.

The judgment of the trial court overruling the exceptions to the second account directed to the allowance of legal fees to counsel for the administrators and to the ordinary and extraordinary compensation fixed by the Probate Court for the administrators will be affirmed.

The judgment overruling the exceptions to the account directed to the failure of the administrators to account for interest on funds of the estate in their hands will be reversed as being manifestly against the weight of the evidence and also for prejudicial error in refusing to accept evidence proffered by the exceptors tending to show the amount or percentage of interest with which the administrators should be charged.

Judgment accordingly.

BARNES, PJ, HORNBECK and GEIGER, JJ, concur.