## MARKER, ESTATE OF, In re

Ohio Appeals, 2nd Dist, Darke Co

No 563. Decided July 6, 1939

T. A. Billingsley, Greenville, George Porter, Greenville, and Jesse K. Brumbaugh, Greenville, for J. E. Williams and J. H. Menke, administrators de bonis non.

## OPINION

BY THE COURT:

This case is before us on an appeal on questions of law by the exceptors to the second and partial account of Joseph Menke and J. E. Williams, administrators de bonis non of the estate of V. S. Marker, deceased, and is predicated particularly upon the claim that the trial court failed to require the administrators to account for the proper amount of interest on sums of money in their hands as such administrators.

We heretofore had this case before us upon the exceptions to the second and partial account of the administrators, at which time we reversed the judgment on the ground that the court erred in refusing to admit certain testimony respecting interest that was paid by creditors on borrowed money and by banks of Greenville upon time certificates of deposit during the period that the administrators held funds of the estate in the bank and because the judgment was against the weight of the evidence in failing to require the administrators to account for interest in some amount. **In re Estate Marker, 24 Abs 400.**

S. E. Mote, Greenville, for certain exceptors.

A. Alvin North, Greenville, for certain exceptors.

J. W. Sharts, Dayton, for Daisy Marker.

The trial judge, in a written opinion with which we have been favored, held that the administrators should be charged with 2% interest on $40,000 from August 1, 1933 to July 1, 1934; on $20,000 from July 1, 1934 to September

1, 1934 and on $15,000 from September 1, 1934 to the filing of their account.

The brief of the administrators is largely devoted to the negative of the proposition which was before us and which we determined in the last decision, namely, that the administrators should be required to pay some interest on the assets of the estate which was in their hands.

We adopt in this case our opinion formerly rendered of date April 21, 1937, and reiterate what we set out in that decision.

We therein expressly held that the claim was not well made that the administrators benefited personally as cashiers and stockholders in their respective banks from the amount of money which they deposited therein as administrators and that the only practicable manner of arriving at the amount with which they should be charged was upon the basis of interest. The trial judge seemed to have some trouble in interpreting the following language in our opinion:

"We do not desire to foreclose the judge if exceptions are again heard from determining that there was no period during which the executors would not be required to pay interest on the funds in their hands."

This may be somewhat difficult of interpretation inasmuch as we have used two negatives, but what we intended to says, and that which we believe we did say, is that the record might support a finding that there was some period during the time that the administrators held the funds during which they would not be required to pay interest. We intended to accord to the trial judge the widest latitude consistent with the law in fixing the rate of interest and the amount upon which interest should be computed.

It must be recognized that every case rests upon its own peculiar facts. Here, as we indicated in our former opinion, the administrators are experts in the field of investment, cashiers of their respective banking institutions, cognizant of the earning power of money and capable of selecting sound securities and making prompt investments with regular turnover.

It is, of course, the duty of an administrator to promptly convert the assets of the estate into cash and to make as early distribution as possible. In this estate, however, much of the assets had been converted into money and invested in interest bearing securities by predecessor administrators under order of court and the funds were turned over to the present administrators in the form of such investments bearing 4% interest. These securities were immediately converted into cash and all the proceeds deposited in checking accounts half and half in the respective banks of which Mr. Williams and Mr. Menke were cashiers, and have produced no interest whatever.

When the assets were taken over both of these men testify that their banks were paying 4% on deposits which were left for six months or more and that this rate was paid until the Federal Government ordered them to pay no more than 2½% some time after the bank holiday on or about March, 1933.

Without respect to the court order, which we hereafter discuss, if ordinary business foresight would have put these administrators on notice that in probability the estate could not be settled within the succeeding six months following their appointment, it was their obligation to invest money in their hands to the best advantage of the estate. To do this would not have necessarily required that they look up individual borrowers because a six month's loan might be difficult to make, but it could be accomplished by the simple expedient of placing the funds, or so much of them as would not be needed, on deposit for a period of six months.

As we stated in our former opinion, it is our judgment that there was no

period, even after the disturbing suits had been instituted, that it should not reasonably have appeared to the administrators that they could not settle the Marker estate within several months. Upon this record we are satisfied that a six month's deposit of a considerable portion of all the funds in the hands of the administrators could have been made at all times prior to the date of the filing of the second and partial account. Indeed there is considerable force to the claim that longer term loans at higher rate of interest might safely have been made in view of the delay in final settlement of the estate which was evident at all times after the appointment of the administrators.

We believe the principle controlling the obligation of the administrators in this case appears in our former opinion and is well set out in a note, 24 C. J., bottom of page 75, wherein it is said:

"The representative should be charged with interest

(1) Where he suffers funds to be idle while outstanding demands draw interest.

(2) Where he neglects unreasonably long to invest or deposit after being directed or authorized so to do by the court.

(3) By decedent's will.

(4) Where he keeps funds unproductive where they ought reasonably to have been made productive.

(5) Where he knows that balances will be long in his hands before he pays over."

Cases are cited for propositions announced. (1), (2), (4) and (5) are pertinent to the situation presented in the instant case. Here the approved claims of creditors were drawing 6% interest. See also Re Babcock, 9 N. Y. Supp., 554; Re McKay, 25 N. Y. Supp. 725; Owens v Owens (Miss.) 37 So., 149; Morris v Mull, 110 Oh St 623; 3 Alexander on Wills, 2272; Dundas v Chrisman (Neb.) 41 N. W.,

449; Re Bush Estate (Neb.) 131 N. W., 602.

We commented in our former opinion upon the fact that the immediate predecessor of the present administrators had on two occasions been directed by the probate judge to invest the funds of the Marker estate in his hands. The last entry was of date March 5, 1925, in this language:

"But the court finds that said estate is in process of litigation concerning various subject matters. It is ordered and adjudged that the said funds be left invested as they now are at the rate of 4% until occasion requires their payment according to the law."

The administrators were appointed on November 30, 1927.

The administrators deny knowledge of these orders. We said in our former opinion that their liability was not controlled solely by their knowledge of these orders. However, we are of opinion that if the court had authority to make the orders, and it is not disputed in this appeal, the present administrators were put on notice respecting the subject matter thereof.

In Thomas v Chamberlain, 39 Oh St 112, Judge McIlvaine in the opinion at page 121 says:

"An administrator de bonis non takes the estate from his predecessor in the same condition he left it. All acts lawfully done in the discharge of his trust by the former administrator are binding on his successor. The law recognizes a privity of estate between them, and it follows, that the case, in this respect, stands exactly as if the same administrator who allowed the claim had afterwards repudiated it."

To the same general effect Bates v Creed, 2 Oh Ap 59, affirmed without opinion. 90 Oh St 288; Bray v Darby, 82 Oh St 58.

These administrators were probably not required to retain the same invest-

ments but surely, without good reason, they should not have failed to place the funds so that they would produce like return as fixed in the court orders. Such investment was not only possible but simple and practicable.

Without more extended discussion let us examine the bank accounts of the administrators in this case. On July 16, 1928, the administrators had a balance of $8,000 plus and from August 17, 1928 until January 1, 1929, they never had a balance of less than $24,000 plus. For the six months period beginning January 2, 1929 and ending July 1, 1929, the lowest balance was $60,000 plus.

From July 2, 1929 to January 1, 1930 the lowest balance was $58,000 plus.

From January 2, 1930 to July 1, 1930 the lowest balance was $57,000 plus.

From July 2, 1930 to January 1, 1931 the lowest balance was $51,000 plus.

From January 2, 1931 to July 1, 1931 the lowest balance was $50,000 plus.

From July 2, 1931 to July 1, 1933 the lowest balance was $49,000 plus.

From July 2, 1933 to January 1, 1934 the lowest balance was $46,000 plus.

From January 2, 1934 to July 1, 1934 the lowest balance was $43,000 plus.

From July 2, 1934 to January 1, 1935 the lowest balance was $16,000 plus, although for a considerable part of this six months period there was as much as $43,000 on deposit.

The second partial account was filed February 25, 1935. It is testified that the administrators made preparation to pay a 10% dividend to creditors as of date January 1, 1930. This dividend may have been delayed by the suits which were instituted by the Markers and was not finally paid until 1934.

The Ronzo Smith case was instituted in April, 1929. In January, 1930, 45 checks were issued to creditors representative of this 10% dividend. The remainder of the $7,000 eventually paid was held until 1934. None of these checks was issued until more than eight months after the Smith case was instituted, the others being held until 1934.

Granting to the administrators the benefit of any doubt, it may be said that there would be some reason to permit them to hold the $7,000 from January 1, 1930 for a reasonable period thereafter, not more than one year thereafter, free from any obligation to place upon interest.

As late as May 18, 1934, the administrators were seeking an order from the probate court to fix a time limit within which creditors should file claims with the administrators. The suits which prevented distribution were out of the way at the time of the filing of the second partial account. If there was intention to file a final account on or about that time, we see no sufficient reason for the filing of the second partial account. Every circumstance in this case indicates that the administrators probably could not make a final account in the near future succeeding the filing of their second account.

The testimony of witnesses for the administrators respecting procedure after the administrators had qualified is convincing that there was no reasonable probability of an early complete settlement of the Marker Estate. The sale of real estate of numerous tracts at different times, the collecting of the funds therefrom, all indicated that an early settlement of the estate was out of the question. The preparation incident to the 10% dividend and the difficulties presented as narrated by the witnesses is further conclusive proof that the matter was to be long delayed. Had the 10% dividend been paid, as contemplated, there was 90% of the assets yet in the hands of the administrators. If it be conceded that the $7,000 necessary to pay the 10% dividend should from January 1, 1930, to January 1, 1931, have been kept by the administrators as available for immediate disbursal and if in addition thereto, at all times, a liberal sum be allowed to them to meet possible demands, even so there was a sizeable amount which should have been producing interest as is indicated by the figures which we have heretofore set

out. It must be noted that these balances were at all times made up after payment of all current demands upon the administrators.

The testimony which is proffered by the administrators in the last hearing of this case, detailing the suits which the administrators felt called upon to defend, was possibly probative of the claim that the estate could not have been safely fully settled by the administrators until the suits were finally adjudicated, but this testimony does not meet nor counteract the liability of the administrators to produce some return from the large amount of money which they had on hands and which ordinary prudence dictated would not be disbursed until after January 1, 1935.

We formerly commented upon §§10-506-45 and 10506-46, a part of the new Probate Code, effective January 1, 1932, and by the provisions of which there would be no doubt that independent of the court order from said date until the filing of the second and partial account, the administrators would be chargeable with interest at 2½% on the funds in their respective banks.

Coming then to the only conclusion which we feel can be properly drawn from this record and allowing to the administrators the widest possible latitude in the surplus which they should have been permitted to retain to meet all current expenditures, including the $7,000 with which to pay the dividend of January 1, 1930, we hold that they should be required to account for interest on the following sums and at the following rate of interest:

| | Bank Balance | Div. | Allowance | Chargeable | Rate of Interest |
|---|---|---|---|---|---|
| July 1, '28 to Jan. 1, '29_____$ | | $ | $ | Av. $16,000 @ | 4% |
| Jan. 2, '29 to July 1, '29_____ | 60,000 | less | 3000 | 57,000 @ | 4% |
| July 2, '29 to Jan. 1, '30_____ | 58,000 | " | 3000 | 55,000 @ | 4% |
| Jan. 2, '30 to July 1, '30_____ | 57,000 | " 7000 & | 3000 | 47,000 @ | 4% |
| July 2, '30 to Jan. 1, '31_____ | 51,000 | " 7000 & | 3000 | 41,000 @ | 4% |
| Jan. 2, '31 to July 1, '31_____ | 50,000 | " | 3000 | 47,000 @ | 4% |
| July 2, '31 to July 1, '33_____ | 49,000 | " | 3000 | 46,000 @ | 4% |
| July 2, '33 to Jan. 1, '34_____ | 46,000 | " | 3000 | 43,000 @ | 2½% |
| Jan. 2, '34 to July 1, '34_____ | 43,000 | " | 3000 | 40,000 @ | 2½% |
| July 2, '34 to Jan. 1, '35_____ | | | | Av. 15,000 @ | 2½% |

This computation is made up to and including the date of the filing of the second and partial account.

Judgment modified in accordance with this opinion.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.